THE ENDERS SALES COMPANY, Appellant, *v.* A. C. PENN, INC., Respondent.

First Department, October 31, 1924.

Contracts — action on sales agency contract to recover moneys retained by defendant, sales agent — contract construed to provide for payment of defendant's services by percentage of net profits — contract does not authorize defendant to deduct its president's salary from gross profits.

In an action to recover an amount retained by the defendant, who acted as sales agent under a contract with the plaintiff, the contract is construed to provide for the payment of the defendant's services by a percentage of the net profits and not to authorize the defendant to retain out of the gross profits the amount of the salary paid to its president, and, therefore, the amount so retained as the salary of the defendant's president should be paid to the plaintiff.

APPEAL by the plaintiff, The Enders Sales Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 16th day of January, 1922, upon the decision of the court rendered after a trial before the court, a jury having been waived.

*Jesse W. Johnson,* for the appellant.

*Dawes, Abbott & Littlefield* [*Hamilton M. Dawes* of counsel], for the respondent.

MCAVOY, J.:

Plaintiff and defendant entered into a contract under the terms of which the defendant became the selling agent of the plaintiff. In the contract is a provision giving to one Albert C. Penn as payment for his services a certain percentage of the net profits of the business. In addition to this defendant claims the right, before ascertaining the net profits, to deduct from the gross profits a

First Department, October, 1924. [Vol. 210

salary for the personal services rendered by Penn to the defendant company. The question here is whether or not the written contract is subject to such an interpretation, having in view the relations of the parties anterior to the agreement and their correspondence relating to plaintiff's proposed engagement with Penn.

The plaintiff, the Enders Sales Company, is a corporation which is owned by one Frank Julian Price, and of which he is the president. The defendant, A. C. Penn, Inc., is a corporation organized by Albert C. Penn for the purpose of carrying out a contract made on the 19th day of February, 1913, by Albert C. Penn and Frank J. Price for the sale by A. C. Penn, Inc., of the goods of the plaintiff corporation. Albert C. Penn is the president of A. C. Penn, Inc. Prior to January 18, 1913, the plaintiff corporation was owned by the Simmons Hardware Company and, as appears from a letter written on that date by Wallace D. Simmons to Albert C. Penn, matters were then being arranged between the Simmons Hardware Company and A. C. Penn looking to the formation of a sales agency by Penn to dispose of Enders products.

After Price acquired control of the Enders Company, he continued these negotiations, with the result that on or about February 19, 1913, a contract, as set out in the complaint, was entered into between Penn and Price, under which this defendant company became the sales agent of the Enders Sales Company. Under the terms of this contract, audits were to be made every three months, but apparently the first audit was not made until October, 1913, when it was disclosed to Price that Penn had taken from the gross profits of the company a salary for himself, which then aggregated $9,000.

The contract outlines the obligations of each party, gives direction regarding an audit, makes a statement as to the division of profits, and contains a clause as to the duration of and manner of terminating the contract.

The plaintiff claims that the contract did not contemplate the payment of salary to the defendant, but that his compensation was regulated entirely by this provision of the contract:

"*Third.* After charging to suspense all accounts receivable that are on the date of such quarterly settlement ninety days or more old, or, in case the goods are billed in the name of your company, after charging the amounts of such accounts to your company, whatever remains shall be considered as net profits, and from such remaining net profits shall be deducted such proportion of them as shall be shown by previous records to result from business established before the beginning of this arrangement. On all such business

which is already established and therefore turned over to you by my company, you are to be paid ten per cent of the net profits until the business from such established customers in any one year shall have equalled an amount of the business of such customer for the year nineteen twelve. On any increased business beyond that established and enjoyed at the beginning of this agreement you are to have fifty per cent, and you are to have fifty per cent of the net profits as herein provided on all new business obtained by you after the inception of this agreement.

" When these net profits are so determined, the proper proportions are to be credited to you and your company when formed and the remainder to my company — such portion of the amount so credited to be paid to whatever extent funds are available — and further amounts on such credit of the net profits to be paid monthly from any funds available at the time of such monthly payments."

Elsewhere in the contract, the defendant claims, in the portion enumerating Penn's duties concerning the marketing of the goods, is the provision entitling him to salary. It reads:

" You may elect to bill the goods in your own name and assume entire responsibility for the collection of all accounts and for all losses, or bill them in the name of my company and have my company assume that responsibility and any losses from bad debts.

" In either case you are to assume the entire responsibility for and incident to the marketing of the goods; to furnish all funds which you use in so doing, including rents of offices, purchasing of office fixtures, supplies and stationery, etc.; the paying of salaries of all office and warehouse employees, shipping clerks, etc.; *salaries* and traveling expenses for yourself and others employed in the selling of the goods."

Under the authority of this provision the defendant, A. C. Penn, Inc., paid to Albert C. Penn a salary fixed by him at approximately $15,000 a year. When discovery of this fact was made, plaintiff demanded of defendant a return of the moneys so paid and, failing restitution by defendant, brought this suit for the payment deducted.

Our conclusion is that the only compensation which defendant was to receive was by way of commissions on sales, and we believe that this is shown not only by the contract itself but also by the contents of the letters written prior to the making of the contract, and by a proposed form of contract submitted by Penn to Price just prior to the making of the contract in suit, which we find were properly admitted to evidence the intention of the parties to the agreement. This proposal and the letters show that compensation

in addition to commissions by way of a salary was never even suggested by either party to the contract.

Since the gravamen of all of these letters was the compensation to be accorded defendant, it would seem inevitable that if a salary was contemplated it would have been adverted to both as to its amount and its time of payment in the negotiations, and it seems incredible that so important a provision as the amount which might well exhaust the profits should be omitted from the contract itself. Nowhere, however, is there even a suggestion of salary; and at the conclusion of the correspondence between Penn and Simmons it is evident that Penn regarded the question of compensation as closed, since he wrote in part in his letter of January thirtieth: " Replying to your communication of January 28th. To sum up my interpretation of the correspondence that has passed between us on this subject, I understand that the person who has purchased the Enders Sales Co. is ready and willing to discuss the sale of Enders Razors and Blades with someone who will act as his selling agent; that he will outline the policy affecting the sale of Enders Razors, and that it is your impression that he will consider favorably the idea of making with his selling agent an arrangement that will permit of a division of the net profits, and I infer from your memorandum that the main point to reach a conclusion about is a plan under which an equal division of the profits will be made that will be acceptable to all parties."

When Price acquired control of the company and personally took up the negotiations, he testified that he had interviews with Penn sometime prior to February 6, 1913, and that they discussed at length all matters theretofore referred to, and that not once was the question of salary mentioned. Price told Penn to prepare a form of contract along the lines which they had discussed, and, following out that suggestion, on February sixth Penn prepared a form of contract which he left with Price. In this proposed contract Penn makes no mention of a salary, nor does he anywhere in his testimony say that a salary was contemplated.

The form of contract submitted by Penn not being satisfactory, Price sent to Penn a proposed contract similar to the one that was afterwards signed. After the commencement of business under the executed contract, when an audit was made, Price learned that Penn had paid himself a salary at the rate of approximately $15,000 a year out of the gross profits. His letter to Penn asking for an explanation was answered by a claim of a right to deduct the salary fixed by himself and a promise to " in every way * * * do what we believe is fair."

We find in the negotiations of the parties nothing to evidence

that it was intended that, before net profits were divided, Penn should take from the gross profits as a salary such sum as he might elect to charge for his own services, which is the extreme construction which may be put on defendant's contention.

Although Penn was in court when testimony was given to the effect that in his conversations with Price no mention was made of a salary to him, and later was called to the stand, he did not contradict nor question this testimony; and it is uncontradicted in this case that the question of salary was never once mentioned.

The physical construction of the contract also indicates that no right to salary was intended. The clause under which Penn claims this right is found in that portion of the contract devoted to the marketing of the goods; and the item of salaries contained therein evidently relates solely to the expenses of Penn in the conduct of sales paid as compensation to subordinate employees, and could not be construed as a promise to pay an undefined and unlimited salary to Penn. The first part of the contract is devoted to a recital of the duties of Price, who was to furnish the goods to be sold; followed by a recital of the obligations of Penn, who was to carry on the sales; then the method of division of the profits.

The paragraph relied upon by defendant has not for its purpose the fixation of the compensation of the parties, but obviously is designed to enumerate the duties of the seller and his responsibilities under the contract.

The argument made by defendant and adverted to by the trial court, that because Price had in mind to make Penn a concession of either a salary or a share in the Simmons profits, which he evidenced by a notation on his own copy of the proposed contract, having given the one, he must be deemed to have given the other, is fallacious. The deduction which logically follows obviously is that the contract having made specific provision for a payment of one of the two alternatives, namely, ten per cent of the net profits of the Simmons business, he must be deemed to have abandoned the alternative of a salary in lieu thereof.

We think the judgment should be reversed, with costs, and on the stipulation judgment should be directed for the plaintiff for $20,027, with costs.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concur.

Judgment reversed, with costs, and judgment directed for the plaintiff for $20,027, with costs. Settle order on notice.